72 A.3d 224

KAREN COLE, PLAINTIFF–RESPONDENT, v. JERSEY CITY MED-
ICAL CENTER, DEFENDANT, AND LIBERTY ANESTHESIA
ASSOCIATES, LLC, DEFENDANT–APPELLANT, AND JERSEY
CITY MEDICAL CENTER, THIRD–PARTY PLAINTIFF, v. LIB-
ERTY ANESTHESIA ASSOCIATES, LLC, THIRD–PARTY DE-
FENDANT.

Argued April 29, 2013—Decided August 14, 2013.

*Dominick J. Bratti* argued the cause for appellant (*Wilentz, Goldman & Spitzer,* attorneys; *Mr. Bratti* and *Annemarie T. Greenan,* on the briefs).

*Gerald J. Resnick* argued the cause for respondent (*Resnick Law Group,* attorneys).

*Jonathan Romberg* argued the cause for amicus curiae Seton Hall Law School Center for Social Justice.

Judge CUFF (temporarily assigned) delivered the opinion of the Court.

In this appeal, we address a party's ability to invoke an arbitration clause where that party moved to compel arbitration twenty-one months after being joined as a defendant to an action and after actively participating in the litigation involving the other party to the arbitration agreement.

Plaintiff, a certified registered nurse anesthetist (CRNA), was employed by a company that had a contract with a hospital to

provide anesthesiology services. Plaintiff's employment contract with her employer contained an arbitration clause. The hospital discovered discrepancies with plaintiff's accounting of certain medications and revoked her privileges to work there. As a result, plaintiff's employer terminated her employment in accordance with the terms of their employment agreement.

Plaintiff commenced an action against the hospital asserting statutory and common law grounds for relief. Subsequently, the hospital impleaded plaintiff's employer as a third-party defendant, and plaintiff amended her complaint to include her employer as a direct defendant. The employer failed to raise the arbitration clause as one of its affirmative defenses.

The hospital settled its claims with plaintiff following the conclusion of discovery and filing of motions for summary judgment. Following entry of summary judgment in favor of the employer on two of four causes of action, and three days before the scheduled trial between the employer and plaintiff, the employer filed a motion to compel arbitration. The trial court granted the motion, reasoning that the employer failed to assert its right to arbitrate the dispute between it and plaintiff at an earlier time because a non-signatory to the agreement, the hospital, was the primary defendant in the action. The Appellate Division reversed, finding the employer was equitably estopped from compelling arbitration.

We address this appeal through the lens of waiver of the right to arbitrate rather than equitable estoppel. A review of the employer's conduct before trial leads us to conclude that it did, in fact, waive its right to invoke the arbitration clause in its contract with plaintiff. We therefore affirm as modified herein and remand for trial.

I.

In April 2004, plaintiff Karen Cole began working as a per diem CRNA at the Jersey City Medical Center (JCMC). At the time, she was working in the same capacity at Overlook Hospital in Summit. Liberty Anesthesia Associates, LLC (Liberty) was an

independent contractor that provided anesthesia services at JCMC. In September 2004, Liberty contracted with Cole to provide full-time CRNA services at JCMC commencing in October 2004.

On September 20, 2004, Liberty sent Cole an employment agreement that contained the terms and conditions of her employment. Liberty informed Cole that her full-time employment would commence on October 1, 2004, and that either party could terminate her employment "at any time for any reason or no reason (with or without cause)" with sixty days' notice. Liberty also informed Cole that it could terminate her employment "automatically and immediately" for several reasons, including suspension, revocation, restriction, or limitation of her nursing license or her staff privileges at the hospital to which she was assigned. The employment agreement also contained an arbitration provision, which stated:

12. Except as set forth in sections 6, 7 and 9 hereof, any claim, controversy or dispute between you and [Liberty] (including without limitation [Liberty's] affiliates, shareholders, employees, representatives, or agents) arising out of or relating to your employment, the cessation of your employment, or any matter relating to the foregoing (any "Controversy"), shall be submitted to and settled by arbitration before a single arbitrator in a forum of the American Health Lawyers Association Alternative Dispute Resolution Service ("AHLA ADRS").... It is agreed that if any party shall desire relief of any nature whatsoever from the other party as a result of any Controversy, it will institute such arbitration proceedings. All costs of said arbitration, including the arbitrator's fees, if any, shall be borne equally by the parties, unless the arbitration decision and award provides otherwise. All legal fees incurred by each party in connection with said arbitration shall be borne by the party who incurs them, unless the arbitration decision and award provides otherwise. The parties agree that the decision and award of the ADRS shall be final and conclusive upon the parties, in lieu of all other legal, equitable or judicial proceedings between them, that no appeal or judicial review of the arbitrator's award shall be taken, and that the decision and award may be entered as a judgment in and enforced by, any court of competent jurisdiction. The foregoing requirement to arbitrate Controversies applies to all claims or demands by you, including without limitation any rights or claims you may have under the Age Discrimination in Employment Act of 1967, Section 1981, Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act of 1991, the Equal Pay Act, the Family and Medical Leave Act, New Jersey Law Against Discrimination or any

other federal, state or local laws or regulations pertaining to your employment or the termination of your employment.

Cole executed the agreement on September 21, 2004.

In April 2007, JCMC discovered numerous discrepancies in Cole's accounting of controlled substances. On May 1, 2007, Cole had a meeting with staff members from JCMC and Liberty to discuss the discrepancies in her records. She was asked to submit to a drug test, but she refused. As a result, JCMC suspended her staff privileges. Later that day, Liberty terminated Cole's employment contract citing the suspension of her privileges at JCMC.

On September 21, 2007, Cole filed a complaint in the Law Division against JCMC. Cole set forth claims for retaliatory discharge in violation of the Conscientious Employee Protection Act (CEPA), *N.J.S.A.* 34:19–1 to –8 (Count One); defamation (Count Two); tortious interference with contract (Count Three); and disability discrimination in violation of the Law Against Discrimination (LAD), *N.J.S.A.* 10:5–1 to –42 (Count Four). Approximately eight months later, on May 23, 2008, the trial court granted JCMC's motion for leave to implead Liberty as a third-party defendant. On June 3, 2008, Cole filed an amended complaint naming Liberty as a direct defendant. She asserted claims against Liberty for retaliation in violation of CEPA (Count One); defamation (Count Two); disability discrimination in violation of the LAD (Count Four); and termination of employment in violation of public policy (Count Five). On August 20, 2008, Liberty filed an answer to Cole's amended complaint and asserted thirty-five affirmative defenses, none of which referred to the arbitration provision of the employment agreement.

Discovery included interrogatories and depositions of at least twelve persons. Cole was deposed over six days from February 20, 2009 to November 12, 2009. Discovery concluded on December 30, 2009. At no time did Liberty invoke the arbitration provision in the employment agreement. One week later, on January 8, 2010, Liberty filed a motion for summary judgment;

JCMC moved for summary judgment on January 19, 2010. At oral argument of the motions on February 19, 2010, Cole informed the court that she had reached a settlement agreement with JCMC. Following argument on Liberty's motion, the court granted summary judgment in favor of Liberty on the defamation and termination in violation of public policy counts of the amended complaint, but it denied summary judgment on the CEPA and LAD counts.

The trial court set March 22, 2010, as the trial date for the remaining claims. On March 11, 2010, Liberty filed its *Rule* 4:25-7(b) pre-trial information exchange in which it listed proposed witnesses and exhibits, designated its proposed deposition and interrogatory readings, and listed the motions in limine it would make. Liberty omitted any mention of a motion to compel arbitration. The parties also submitted proposed voir dire questions and proposed jury charges.

On March 19, 2010, Liberty filed a motion to compel arbitration pursuant to the arbitration provision in the parties' employment contract. Liberty maintained it did not seek to compel arbitration sooner because JCMC, the primary defendant in the litigation, was not a party to the agreement. Liberty explained it did not want to risk disparate results from a jury and an arbitrator. Opposing the motion, Cole argued Liberty waived its right to compel arbitration by failing to raise the issue in a timely fashion and by actively participating in the litigation. She also maintained the provision was unenforceable and inapplicable to her claims.

The trial court granted Liberty's motion to compel arbitration and dismissed Cole's complaint with prejudice. The court determined the arbitration provision applied to Cole's claims regarding wrongful termination under CEPA and the LAD. Moreover, after observing that prejudice is the touchstone of a waiver determination, the court concluded Cole suffered none. It reasoned that the discovery that occurred between Cole and JCMC would have taken place regardless of an arbitration proceeding between Liberty and Cole, that Liberty did not purposely abuse the litigation

process, that participation by a non-signatory to the employment agreement justified failure to exercise the arbitration provision by Liberty, and that Liberty acted shortly after it learned of the JCMC settlement. As a result, the court granted Liberty's motion on March 29, 2010. Later, the court denied Cole's motion for reconsideration.

Cole appealed to the Appellate Division, maintaining that Liberty waived its right to compel arbitration and that the arbitration provision was unenforceable. The Appellate Division reversed the trial court's order. *Cole v. Jersey City Med. Ctr.*, 425 *N.J.Super.* 48, 39 *A.*3d 909 (App.Div.2012). After noting the presumption against waiver of an arbitration agreement, the panel stated: "The key to determining waiver is the absence or presence of prejudice to the party objecting to the arbitration." *Id.* at 57, 39 *A.*3d 909. The panel found "Liberty's actions operated to the detriment of [Cole,]" when, instead of immediately moving to arbitrate, it "knowingly decided not to raise its rights to arbitration" in order "to avoid the risk of inconsistent findings by two separate fact-finders." *Id.* at 59, 39 *A.*3d 909. The appellate panel also discussed the doctrine of equitable estoppel, *id.* at 59–61, 39 *A.*3d 909; found Cole relied on Liberty's conduct when "Liberty voluntarily and intentionally decided to relinquish its right to arbitration as a forum to adjudicate [Cole's] claims as a matter of litigation strategy[,]" *id.* at 61, 39 *A.*3d 909; and determined Liberty was equitably estopped from invoking the arbitration provision and compelling Cole to submit her remaining claims to arbitration, *id.* at 51, 61, 39 *A.*3d 909. Accordingly, the panel reversed and remanded for trial. *Id.* at 61, 39 *A.*3d 909.

This Court granted Liberty's petition for certification, 212 *N.J.* 198, 52 *A.*3d 176 (2012), and also granted the Seton Hall Law School Center for Social Justice (Center) leave to appear as amicus curiae.

## II.

Liberty contends the Appellate Division improperly applied the standard for determining waiver. According to Liberty, although

the panel correctly identified the key issue as the absence or presence of prejudice, it improperly determined Cole suffered prejudice by simply stating that the effort to prepare for trial is significantly greater than the effort to prepare for arbitration. Liberty notes the panel failed to recognize that most of Cole's trial preparation would have occurred regardless of any arbitration proceeding between Cole and Liberty because her case against JCMC was substantially similar to her case against Liberty.

Liberty also argues the Appellate Division improperly concluded as a matter of law that Cole's claims against JCMC would have been stayed automatically had Liberty made its motion to compel arbitration earlier. In the exercise of its discretion, Liberty contends, the trial court might not have stayed the case because the claims against Liberty and JCMC were intertwined and the arbitration award could have had preclusive effect in the trial court.

Additionally, Liberty maintains the doctrine of equitable estoppel does not apply to this case. It argues Cole would not be barred from pursuing her claims if Liberty's motion was granted but, rather, she simply would pursue her claims in a different forum. Moreover, Liberty distinguishes this case from other equitable estoppel cases because, here, Cole would have incurred the same costs of discovery and trial preparation due to her similar claims against JCMC. Thus, according to Liberty, this case is different from other equitable estoppel cases and the panel improperly applied the equitable estoppel doctrine.

Finally, Liberty suggests this Court should articulate a standard for determining the absence or presence of prejudice and a framework through which a party can preserve its right to compel arbitration when multiple parties are involved in the litigation and not all are subject to the arbitration provision.

In response, Cole argues the Appellate Division properly concluded Liberty's conduct caused her prejudice, justifying the waiver of its right to compel arbitration. Cole also asserts the doctrine of equitable estoppel applies to this case. Finally, she

maintains any issue involving the stay of the claims against JCMC is purely academic because Liberty did not make its motion until after JCMC was no longer a party to the case.

The Center maintains equitable estoppel and waiver are distinct doctrines, such that estoppel focuses on prejudice and waiver focuses on abandoning a known right. The basis for the Center's analysis focuses on its contention that "waiver ... turns not on the existence of objectively reasonable prejudice, but rather on the subjective intent of the party possessing a right not to avail itself of that right." As such, the Center urges this Court to reject the position that, to establish waiver, a party must demonstrate prejudice. Instead, the Center proposes the waiver analysis should focus only on the conduct of the party who may have waived the right.

Applying that standard to the facts of this case, the Center maintains Liberty waived its arbitration right by failing to move to compel arbitration for twenty-one months. Finally, the Center supports the application of the doctrine of equitable estoppel in this case and argues Liberty should be equitably estopped from compelling arbitration because Liberty's choice to litigate during those twenty-one months prejudiced Cole.

### III.

### A.

The issue of whether a party waived its arbitration right is a legal determination subject to de novo review. *See Manalapan Realty L.P. v. Twp. Comm.,* 140 *N.J.* 366, 378, 658 *A.*2d 1230 (1995); *In re S & R Co. of Kingston v. Latona Trucking, Inc.,* 159 *F.*3d 80, 83 (2d Cir.1998). Nonetheless, the factual findings underlying the waiver determination are entitled to deference and are subject to review for clear error. *See Rova Farms Resort, Inc. v. Investors Ins. Co. of Am.,* 65 *N.J.* 474, 483–84, 323 *A.*2d 495 (1974).

B.

■ "[A]rbitration . . . is a favored means of dispute resolution." *Hojnowski v. Vans Skate Park,* 187 *N.J.* 323, 342, 901 *A.*2d 381 (2006); *accord Martindale v. Sandvik, Inc.,* 173 *N.J.* 76, 84, 800 *A.*2d 872 (2002); *Garfinkel v. Morristown Obstetrics & Gynecology Assocs.,* 168 *N.J.* 124, 131, 773 *A.*2d 665 (2001); *Marchak v. Claridge Commons, Inc.,* 134 *N.J.* 275, 281, 633 *A.*2d 531 (1993); *Barcon Assocs. v. Tri–County Asphalt Corp.,* 86 *N.J.* 179, 186, 430 *A.*2d 214 (1981). As such, under the Uniform Arbitration Act, *N.J.S.A.* 2A:23B–1 to –32, an arbitration agreement is considered to be "valid, enforceable, and irrevocable except upon a ground that exists at law or in equity for the revocation of a contract." *N.J.S.A.* 2A:23B–6; *see also N.J.S.A.* 2A:23A–2 (stating agreement to settle dispute by means of alternative resolution provided by New Jersey Alternative Procedure for Dispute Resolution Act, *N.J.S.A.* 2A:23A–1 to –30, is valid, enforceable, and irrevocable except on legal or equitable grounds to revoke contract).

■ "An arbitration agreement is a contract and is subject, in general, to the legal rules governing the construction of contracts." *McKeeby v. Arthur,* 7 *N.J.* 174, 181, 81 *A.*2d 1 (1951) (citation omitted). "[A]n arbitration clause may be modified or superseded." *Wein v. Morris,* 194 *N.J.* 364, 376, 944 *A.*2d 642 (2008). As such, this Court has recognized that parties may waive their right to arbitrate in certain circumstances. *See ibid.* Waiver is never presumed. An agreement to arbitrate a dispute "can only be overcome by clear and convincing evidence that the party asserting it chose to seek relief in a different forum." *Spaeth v. Srinivasan,* 403 *N.J.Super.* 508, 514, 959 *A.*2d 290 (App.Div.2008). The same principles govern waiver of a right to arbitrate as waiver of any other right. *Ibid.*

■ "Waiver is the voluntary and intentional relinquishment of a known right." *Knorr v. Smeal,* 178 *N.J.* 169, 177, 836 *A.*2d 794 (2003). The party must "have full knowledge of [its] legal rights and intent to surrender those rights." *Ibid.* We have

determined that a party need not expressly state its intent to waive a right; instead, waiver can occur implicitly if "the circumstances clearly show that the party knew of the right and then abandoned it, either by design or indifference." *Ibid.* Such a waiver must be done "clearly, unequivocally, and decisively." *Ibid.* Determining whether a party waived a right is a fact-sensitive analysis. *See ibid.*

Although this Court has addressed waiver of the right to a judicial determination when the parties engage in arbitration, *see, e.g., Johnson v. Johnson,* 204 *N.J.* 529, 545, 9 *A.*3d 1003 (2010); *Fawzy v. Fawzy,* 199 *N.J.* 456, 462, 482, 973 *A.*2d 347 (2009), and waiver of the right to arbitrate when a judge orders arbitration sua sponte, *see, e.g., Wein, supra,* 194 *N.J.* at 376, 944 *A.*2d 642, this Court has not addressed the standard necessary to establish that a party implicitly waived its right to arbitrate in order to receive a judicial adjudication. The principles set forth in *Wein* inform our decision to the extent we recognized certain circumstances can demonstrate waiver of a contractual arbitration right. Those circumstances include filing a complaint in the Superior Court without referring to a contractual arbitration provision, filing an answer and counterclaim without referring to a contractual arbitration provision, and extensively engaging in discovery. *Ibid.* The precise circumstances presented in this appeal were not addressed in *Wein,* because the parties there mutually waived their right to arbitrate but the court sua sponte ordered arbitration. *Ibid.*

The Appellate Division has stated that waiver may occur when a party to an arbitration agreement participates "in prolonged litigation, without a demand for arbitration or an assertion of a right to arbitrate." *Hudik–Ross, Inc. v. 1530 Palisade Ave. Corp.,* 131 *N.J.Super.* 159, 167, 329 *A.*2d 70 (App.Div.1974). Following that guidance, the Appellate Division has engaged in fact-sensitive analyses on a case-by-case basis. The result of such an approach finds waiver in some situations but not in others. *Compare Spaeth, supra,* 403 *N.J.Super.* at 516–17, 959 *A.*2d 290 (finding no

waiver when little delay occurred, little discovery ensued, and other party suffered no prejudice), *and Hudik–Ross, supra*, 131 *N.J.Super.* at 167, 329 *A.*2d 70 (finding no waiver when little delay occurred, party did not use arbitration as means for delay, and party gave notice of intent to arbitrate as affirmative defense), *with Farese v. McGarry*, 237 *N.J.Super.* 385, 394, 568 *A.*2d 89 (App.Div.1989) (finding waiver when complaint and answer to counterclaim did not assert arbitration, there was delay in raising arbitration clause, and arbitration not raised until two weeks before trial).

Federal decisions also provide guidance because the Uniform Arbitration Act mirrors the Federal Arbitration Act, 9 *U.S.C.A.* §§ 1–16. *See Spaeth, supra*, 403 *N.J.Super.* at 513 n. 1, 959 *A.*2d 290. Under "federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 *U.S.* 1, 24–25, 103 *S.Ct.* 927, 941, 74 *L.Ed.*2d 765, 785 (1983). Like New Jersey, federal courts use a fact-sensitive analysis when determining whether waiver occurred. *See Gavlik Constr. Co. v. H.F. Campbell Co.*, 526 *F.*2d 777, 783–84 (3d Cir.1975).

In *Gavlik*, the United States Court of Appeals for the Third Circuit relied on the United States Court of Appeals for the Second Circuit's test for waiver, acknowledging that "[m]erely answering on the merits, asserting a counterclaim (or cross-claim) or participating in discovery, without more, will not necessarily constitute a waiver." *Id.* at 783 (alteration in original) (internal quotation marks omitted). Twenty years later, the Third Circuit reiterated that "waiver will normally be found only 'where the demand for arbitration came long after the suit commenced and when both parties had engaged in extensive discovery.'" *Paine-Webber Inc. v. Faragalli*, 61 *F.*3d 1063, 1068–69 (3d Cir.1995) (quoting *Gavlik, supra*, 526 *F.*2d at 783).

In the Third Circuit, determining whether waiver occurred requires an analysis of

> not only the timeliness or lack thereof of a motion to arbitrate but also the degree to which the party seeking to compel arbitration has contested the merits of its opponent's claims; whether that party has informed its adversary of the intention to seek arbitration even if it has not yet filed a motion to stay the district court proceedings; the extent of its non-merits motion practice; its assent to the district court's pretrial orders; and the extent to which both parties have engaged in discovery.

> [*Hoxworth v. Blinder, Robinson & Co.*, 980 *F*.2d 912, 926–27 (3d Cir.1992) (citations omitted); *accord Nat'l Found. for Cancer Research v. A.G. Edwards & Sons, Inc.*, 821 *F*.2d 772, 777–78 (D.C.Cir.1987); *Price v. Drexel Burnham Lambert, Inc.*, 791 *F*.2d 1156, 1160–62 (5th Cir.1986).]

Applying those principles in *Hoxworth*, *supra*, the Third Circuit found the defendants waived their right to arbitrate because the litigation had been ongoing for eleven months prior to the defendants' motion to compel arbitration, the parties had engaged in extensive motion practice, and the parties had engaged in comprehensive discovery. 980 *F*.2d at 925–27. As a result, the plaintiffs suffered prejudice, and the defendants waived their right to arbitrate. *Id.* at 927.

By contrast, in a later case, the same court found a defendant did not waive its arbitration right when it filed its motion to compel arbitration within two months of the complaint being filed, the parties did not brief the merits, the parties did not engage in any discovery, and the plaintiff did not show prejudice. *Paine-Webber, supra*, 61 *F*.3d at 1069.

The Second Circuit has adopted similar factors. It considers: "(1) the time elapsed from the commencement of litigation to the request for arbitration, (2) the amount of litigation (including any substantive motions and discovery), and (3) proof of prejudice." *PPG Indus., Inc. v. Webster Auto Parts, Inc.*, 128 *F*.3d 103, 107 (2d Cir.1997). The Second Circuit likewise has acknowledged "[t]here is no bright-line rule ... for determining when a party has waived its right to arbitration: the determination of waiver depends on the particular facts of each case." *Id.* at 107–08.

Like the federal courts, several other states also utilize a totality of the circumstances approach to decide whether a party's conduct constituted a waiver of its right to arbitrate. *See, e.g., Wagner Constr. Co. v. Pac. Mech. Corp.,* 41 *Cal.*4th 19, 58 *Cal. Rptr.*3d 434, 157 *P.*3d 1029, 1035 (2007); *Stark v. Molod Spitz DeSantis & Stark, P.C.,* 9 *N.Y.*3d 59, 845 *N.Y.S.*2d 217, 876 *N.E.*2d 903, 908 (2007). Those states tend to evaluate a multitude of factors, most especially the length of time that passed before the party moved for arbitration and the party's conduct during litigation, including its use of dispositive motion practice. *See, e.g., Welty Bldg. Co. v. Indy Fedreau Co.,* 985 *N.E.*2d 792, 798 (Ind.Ct. App.2013); *CropMark Direct, LLC v. Urbanczyk,* 377 *S.W.*3d 761, 763–64 (Tex.App.2012), *review denied,* No. 12–0787 (Tex.2013). Some courts require a party to prove prejudice as an element of waiver, *see, e.g., Companion Life Ins. Co. v. Whitesell Mfg., Inc.,* 670 *So.*2d 897, 899 (Ala.1995); *Advest, Inc. v. Wachtel,* 235 *Conn.* 559, 668 *A.*2d 367, 372 (1995); *Pa. Life Ins. Co. v. Simoni,* 641 *N.W.*2d 807, 812 (Iowa 2002), while other courts specifically declare a party need not prove prejudice, *see, e.g., Raymond James Fin. Servs., Inc. v. Saldukas,* 896 *So.*2d 707, 711 (Fla.2005), while still others find prejudice is simply one factor to consider, *see, e.g., Wagner Constr. Co., supra,* 58 *Cal.Rptr.*3d 434, 157 *P.*3d at 1035; *City & Cnty. of Denver v. Dist. Court of Denver,* 939 *P.*2d 1353, 1369 (Colo.1997).

## IV.

Any assessment of whether a party to an arbitration agreement has waived that remedy must focus on the totality of the circumstances. That assessment is, by necessity, a fact-sensitive analysis. In deciding whether a party to an arbitration agreement waived its right to arbitrate, we concentrate on the party's litigation conduct to determine if it is consistent with its reserved right to arbitrate the dispute. Among other factors, courts should evaluate: (1) the delay in making the arbitration request; (2) the filing of any motions, particularly dispositive

motions, and their outcomes; (3) whether the delay in seeking arbitration was part of the party's litigation strategy; (4) the extent of discovery conducted; (5) whether the party raised the arbitration issue in its pleadings, particularly as an affirmative defense, or provided other notification of its intent to seek arbitration; (6) the proximity of the date on which the party sought arbitration to the date of trial; and (7) the resulting prejudice suffered by the other party, if any. No one factor is dispositive. A court will consider an agreement to arbitrate waived, however, if arbitration is simply asserted in the answer and no other measures are taken to preserve the affirmative defense. *See cf. Williams v. Bell Tel. Labs. Inc.*, 132 *N.J.* 109, 118–20, 623 *A.*2d 234 (1993) (finding waiver when defendant raised statute-of-limitations defense in answer but took no other measures to preserve defense); *Fees v. Trow,* 105 *N.J.* 330, 335, 521 *A.*2d 824 (1987) (finding waiver when statute-of-limitations defense not pled in answer, not raised in motion for summary judgment, and not mentioned at any stage of proceedings); *see also R.* 4:5–4.

 Applying those factors to this case, we conclude that Liberty engaged in litigation conduct that was inconsistent with its right to arbitrate the dispute with its former employee. Liberty was a party to the lawsuit for twenty-one months before seeking to invoke the arbitration provision. A twenty-one month delay is substantial, particularly in light of the fact that Liberty otherwise failed to provide notice of its intent to seek arbitration. Liberty advanced thirty-five affirmative defenses in its answer, but it did not include arbitration as one of them. *See R.* 4:5–4. Although the failure to list arbitration as an affirmative defense is not dispositive of the issue, *see, e.g., Spaeth, supra,* 403 *N.J.Super.* at 512, 516–17, 959 *A.*2d 290, it does inform the waiver analysis.

The timing of the motion to compel arbitration is important here because it occurred three days before the scheduled trial date. By then, as evidenced by the preparation and submission of proposed witness and exhibit lists, interrogatory and discovery readings, and motions in limine, the parties' conduct reflected a

commitment to try the case. Invoking an arbitration clause on the eve of trial has a detrimental impact on the litigation process. Up to that point, the parties invested considerable time in the lawsuit and anticipated a judicial determination in the near future; referral to arbitration further delayed the resolution of the case. With a trial set to commence within days, the parties already incurred substantial costs while preparing the case with an eye toward trial.

Moreover, during the period of delay, the parties engaged in motion practice. Most importantly, Liberty filed a motion for summary judgment. The filing of a dispositive motion is a significant factor demonstrating a submission to the authority of a court to resolve the dispute. The motion was partially granted and partially denied, as the trial court found in Liberty's favor on the defamation and termination in violation of public policy claims but against Liberty on Cole's CEPA and LAD claims. Notably, Liberty does not take the position that it would surrender that partial substantive dismissal if the matter proceeded to arbitration.

We need not address the contention, as urged by amicus, that prejudice to the party resisting arbitration is simply a factor, and certainly not an indispensable factor, in a waiver analysis. If we define prejudice as " 'the inherent unfairness—in terms of delay, expense, or damage to a party's legal position—[then prejudice] occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue.' " *PPG Indus., supra*, 128 *F*.3d at 107 (quoting *Doctor's Assocs., Inc. v. Distajo*, 107 *F*.3d 126, 134 (2d Cir.), *cert. denied*, 522 *U.S.* 948, 118 *S.Ct.* 365, 139 *L.Ed.*2d 284 (1997)). When Liberty invoked its right to arbitrate their employment dispute, Cole was on the verge of a judicial resolution of her complaint. After twenty-one months, Cole was directed to start over in a different forum under different rules.

To be sure, the extensive discovery in which all parties engaged may have occurred even if Liberty had invoked its right to arbitrate the employment dispute with Cole as soon as she joined Liberty as a direct defendant. It is just as likely, however, that

the Superior Court action would have been stayed to permit the arbitration to proceed. *See Wein, supra,* 194 *N.J.* at 380, 944 *A.*2d 642. We do know that Liberty deliberately elected not to invoke arbitration to avoid disparate results and only changed course on the eve of trial after JCMC reached a settlement with Cole. That tardy change of course hindered no one but Cole, who faced further delay and cost to resolve her case.

■ Our analysis is not affected by the fact that non-arbitrable claims initially were present in the lawsuit as Cole asserted claims against JCMC, who was not a party to the arbitration agreement. Because waiver involves a fact-sensitive analysis, we need not adopt a separate framework for parties to preserve their right to arbitrate in a multi-party action. A party that intends to invoke its right to arbitrate in a case where another party is a non-signatory to the arbitration agreement may preserve its right by asserting arbitration in its answer as an affirmative defense, moving to compel arbitration in a timely manner, moving to stay the judicial proceeding, or notifying the other party to the arbitration agreement that its litigation conduct should not be considered a waiver of its right to arbitrate the dispute. *But see c.f. Williams, supra,* 132 *N.J.* at 118–20, 623 *A.*2d 234 (finding assertion of statute-of-limitations defense in answer alone insufficient to preserve that defense).

Our evaluation of the totality of the circumstances of this case leads to the inexorable conclusion that Liberty waived its right to arbitrate during the course of litigation. Liberty engaged in all of the usual litigation procedures for twenty-one months and, only on the eve of trial, invoked its right to arbitrate. Such conduct undermines the fundamental principles underlying arbitration and is strongly discouraged in our state.

## V.

■ The Appellate Division relied on equitable estoppel principles to reach its decision. We need not determine whether equitable estoppel barred arbitration of the employment dispute

here because we have determined that Liberty waived its right to proceed in that forum through its conduct. Waiver and equitable estoppel are different legal principles with different elements. *See Knorr, supra,* 178 *N.J.* at 178, 836 *A.*2d 794. We need not resort to equitable estoppel here.

## VI.

The judgment of the Appellate Division is affirmed as modified. The case is remanded to the Law Division for trial.

*For modification/remandment*—Chief Justice RABNER and Justices LaVECCHIA, HOENS and PATTERSON, and Judges RODRÍGUEZ (temporarily assigned) and CUFF (temporarily assigned)—6.

*Not Participating*—Justice ALBIN.

*Opposed*—None.