NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3120-22

MARMO AND SONS
GENERAL CONTRACTING, LLC,

      Plaintiff-Appellant,

v.

BIAGI FARMS, LLC,

      Defendant-Respondent.

_____

| APPROVED FOR PUBLICATION |
| :---: |
| **May 24, 2024** |
| **APPELLATE DIVISION** |

BIAGI FARMS, LLC, TAMMIE
AND NICHOLAS BIAGI,

      Third-Party Plaintiffs-
      Respondents,

v.

MARMO AND SONS GENERAL
CONTRACTING, LLC, WILLIAM
AND HEATHER MARMO,

      Third-Party Defendants-
      Appellants.

_____

Argued April 15, 2024 – Decided May 24, 2024

Before Judges Sabatino, Chase, and Vinci.

On appeal from the Superior Court of New Jersey, Law Division, Gloucester County, Docket No. L-1109-22.

Sam Maybruch argued the cause for appellants (Arbus, Maybruch & Goode, LLC, attorneys; Sam Maybruch, on the briefs).

Justin D. Santagata argued the cause for respondent (Cooper Levenson, PA, attorneys; Justin D. Santagata, Samantha Edgell, and Katlin Trout, on the briefs).

The opinion of the court was delivered by

SABATINO, P.J.A.D.

This dispute involves whether a party to a contract waived its right to compel arbitration by its conduct in a lawsuit it initiated.

Marmo & Sons General Contracting, LLC, and William and Heather Marmo (collectively "Marmo") appeal from the trial court's denial of their motion to compel arbitration of claims against Biagi Farms, LLC, and Tammie and Nicholas Biagi (collectively "Biagi") for nonpayment of residential construction services Marmo rendered to Biagi.

Marmo asserts the trial court incorrectly ruled that Marmo waived its contractual right to arbitrate. Among other things indicative of such a waiver, the record shows that: (1) Marmo filed claims as a plaintiff in the Law Division beyond those necessary to assert a lien under the Construction Lien Law ("CLL"), N.J.S.A. 2A:44A-1 to -38; (2) asserted in its Rule 4:5-1(b)(2)

certification accompanying its complaint that no arbitration was contemplated; and (3) waited to move to compel arbitration after receiving the benefit of significant discovery while failing to comply reciprocally with Biagi's discovery demands.

Applying the multifactor test prescribed in Cole v. Jersey City Medical Center, 215 N.J. 265, 280-81 (2013), we conclude Marmo waived its right to compel arbitration for numerous reasons detailed in this opinion. In the course of doing so, however, we reject Biagi's contention that the United States Supreme Court's opinion in Morgan v. Sundance, Inc., 596 U.S. 411, 417-19 (2022), eradicates the Cole factor that considers whether the party opposing arbitration was prejudiced by the movant's delay. Prejudice remains one of the pertinent, but not individually dispositive, Cole factors after Morgan. Nevertheless, that particular factor is not controlling in this case, given the totality of the circumstances that otherwise, on balance, further establish waiver.

I.

In May 2021, the parties executed a written contract in which Marmo agreed to build a house for Biagi in New Jersey for $907,679. The six-page agreement, which was drafted by Marmo, contains a provision in which the parties agreed that any disputes arising out of the contract are to be referred to

3

binding arbitration administered by the American Arbitration Association ("AAA").

Marmo partially built the house before a dispute arose between the parties. Biagi terminated the contract, refusing to pay Marmo anything further.

In August 2022, Marmo served Biagi with an arbitration demand and a notice of unpaid balance under the CLL to assert a lien for $225,947.91 Marmo claimed was due under the contract. Biagi opposed the lien. Pursuant to the CLL, the residential lien dispute was presented to an arbitrator. N.J.S.A. 2A:44A-6(a)(2). After a one-day hearing, the CLL arbitrator[1] issued a decision on October 3, 2022, authorizing the entry of a lien in Marmo's favor for a reduced amount of $132,887. The lien reflected downward adjustments for unsigned change orders ($54,949), claimed extra work for which there are no signed change orders ($10,495), and "a set-off for certain remedial work claims" ($27,616).

Shortly after the lien arbitration concluded, Marmo filed a complaint on October 20, 2022 against Biagi in the Law Division alleging: (1) breach of

---

[1] We use the term "CLL arbitrator" to distinguish the pre-lawsuit arbitrator of the lien dispute from the arbitrator of plenary issues who Marmo sought to have appointed after it had been litigating its lawsuit for several months in the Law Division.

contract, (2) unjust enrichment, (3) enforcement of a residential construction lien under the CLL, and (4) reasonable value of services.

Notably, Marmo's complaint was accompanied by the requisite Rule 4:5-1(b)(2) certification disclosing whether other related proceedings were pending or contemplated.[2] Marmo's certification attested that the matter is "not the subject of any other action pending in any other court or of a pending arbitration proceeding, to the best of our knowledge and belief. Also, to the best of our belief, no other action or arbitration proceeding is contemplated." (emphasis added). Although it is hedged by the insertion of the "best of our knowledge and belief" and "best of our belief" language, not appearing in Rule 4:5-1(b)(2), the certification otherwise tracks the Rule.

On January 6, 2023, Biagi filed an answer denying the complaint's allegations and asserting affirmative defenses of fraud, nonperformance, and entitlement to a set-off greater than the lien. The answer further asserts

---

[2] Rule 4:5-1(b)(2) provides: "Each party shall include with the first pleading a certification as to whether the matter in controversy is the subject of any other action pending in any court or of a pending arbitration proceeding, or whether any other action or arbitration proceeding is contemplated; and, if so, the certification shall identify such actions and all parties thereto." Further, "[e]ach party shall have a continuing obligation during the course of the litigation to file and serve on all other parties and with the court an amended certification if there is a change in the facts stated in the original certification."

counterclaims against Marmo for: (1) breach of contract, (2) breach of the covenant of good faith and fair dealing, (3) negligence, (4) consumer fraud under N.J.S.A. 56:8-1, (5) racketeering under N.J.S.A. 2C:41-4, (6) tortious interference with contract, and (7) restraint of trade under N.J.S.A. 56:9-12. Biagi also pled a third-party complaint that included claims against the Marmos individually. Biagi demanded a jury trial.

Biagi's pleadings were accompanied by its own Rule 4:5-1(b)(2) certification, stating the matter is "not presently the subject of any . . . pending arbitration or administrative proceeding." The certification did not address whether any arbitration was contemplated.

Marmo filed an answer denying Biagi's counterclaims and third-party claims and asserting various affirmative defenses. Again, Marmo's pleadings failed to state that the disputes should be addressed in arbitration rather than in court.

The case then proceeded through what the trial court characterized as "significant discovery." The court noted that when Marmo answered the counterclaim and third-party complaint, it simultaneously served Biagi with 100 written discovery demands. When Biagi did not timely respond, Marmo threatened to file a motion to compel discovery. Two weeks later, Biagi

produced to Marmo "over 800 pages of documents and several gigabytes of e-discovery that required the use of an outside vendor to complete." Biagi also answered Marmo's interrogatories and produced additional e-discovery. In addition, the parties each received discovery produced through subpoenas served by Biagi upon the project's four subcontractors. Marmo also participated "without prejudice" in the scheduling of depositions, which, as it turned out, did not transpire before Marmo's motion to compel arbitration.

Meanwhile, Marmo did not comply with Biagi's discovery demands. It obtained an extension of time to comply, but, as the trial court found, "that date came and Marmo produced no discovery." "As a consequence," the court found, "Marmo has received and gained the benefit of [Biagi's] extensive discovery production but has withheld its own discovery responses."

On April 14, 2023—about six months after it filed its complaint—Marmo moved to stay the Law Division proceedings and to compel arbitration. After hearing oral argument, the trial court denied the motion to compel arbitration in a written decision.

For reasons we will discuss in depth in Part II, the trial court concluded Marmo "waived its right to transfer the case to arbitration and therefore denies the motion."

This interlocutory appeal by Marmo ensued.

## II.

As federal and New Jersey case law implementing the Federal Arbitration Act ("FAA") have recognized, the voluntary arbitration of civil disputes by mutual agreement is generally favored, subject to certain exceptions. See Epic Sys. Corp. v. Lewis, 584 U.S. 497, 505 (2018); Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430, 440 (2014). One of those exceptions applies when a party to a contractual arbitration provision has waived the right to compel arbitration, by its actions or inactions. Cole, 215 N.J. at 276-77.

In its 2013 opinion in Cole, 215 N.J. at 281-83, the New Jersey Supreme Court announced a multifactor "totality of the circumstances" test for evaluating whether a party has waived its contractual right to arbitration. Those factors are:

> (1) the delay in making the arbitration request; (2) the filing of any motions, particularly dispositive motions, and their outcomes; (3) whether the delay in seeking arbitration was part of the party's litigation strategy; (4) the extent of discovery conducted; (5) whether the party raised the arbitration issue in its pleadings, particularly as an affirmative defense, or provided other notification of its intent to seek arbitration; (6) the proximity of the date on which the party sought arbitration to the date of trial; and (7) the resulting prejudice suffered by the other party, if any.

[Id. at 280-81.]

Cole made clear that "[n]o one factor is dispositive." Id. at 281.

Applying those newly announced factors, the Court concluded the arbitration movant in Cole "engaged in litigation conduct that was inconsistent with its right to arbitrate the dispute with its former employee." Ibid. Among other things, the movant had failed to assert arbitration as a defense in its pleadings, participated in discovery during a pretrial period spanning over twenty-one months, and had filed a partially successful dispositive motion. Id. at 281-82.

Nearly a decade after Cole was decided, the United States Supreme Court in 2022 addressed the standards for arbitration waiver in Morgan, 596 U.S. at 211. Morgan invalidated Eighth Circuit precedent that had "condition[ed] a waiver of the right to arbitrate on a showing of prejudice." 596 U.S. at 417.

In Morgan, an hourly employee of a Taco Bell franchise owned by defendant Sundance filed a nationwide collective action asserting Sundance violated the Fair Labor Standards Act. 596 U.S. at 413-15. Sundance "initially defended itself against Morgan's suit as if no arbitration agreement existed" by moving to dismiss the suit as duplicative of a previous collective action by Taco

9

Bell employees.  Id. at 414.  Sundance answered the complaint with fourteen affirmative defenses, none of which mentioned arbitration.  Ibid.

After participating in unsuccessful mediation and in scheduling conferences with the court, Sundance moved to compel arbitration under the FAA, nearly eight months after the filing of the complaint.  Id. at 414-15.  The district court denied the motion to compel.  Ibid.  In doing so, the district court applied Eighth Circuit precedent requiring a party alleging waiver to show resulting prejudice.  Ibid.  The district court concluded that Morgan had shown such prejudice.  Ibid.  Applying the same legal test, a split panel of the Eighth Circuit reversed.  Ibid.  The majority ruled that Morgan had not established prejudice, noting the parties had not yet engaged in formal discovery, nor contested any matters going to the merits of the case.  Ibid.  The dissenting circuit judge disagreed, noting that Morgan had wasted time and money in opposing Sundance's dismissal motion and in a fruitless mediation.  Id. at 415-16.  The dissenter also expressed doubts about the propriety of the prejudice requirement.

The Supreme Court granted certiorari in Morgan to resolve a conflict among the circuit courts about the propriety of a prejudice requirement.  Id. at

10

416. Nine circuits, including the Eighth, had imposed such a requirement, and two circuits eschewed such a rule. Ibid.

The Court in Morgan adopted the circuits' minority position, holding that it was incompatible with the policies of the FAA to impose an absolute requirement of prejudice in establishing waiver of a right to arbitration. Id. at 419. Writing for a unanimous Court, Justice Kagan cautioned against devising "arbitration-specific procedural rules" so as "to tilt the playing field in favor of (or against) arbitration." Ibid. Because the Eighth Circuit's prejudice rule was such an arbitration-specific precondition of waiver, the Court disavowed it. Ibid. The Court noted that "[o]utside the arbitration context, a federal court assessing waiver does not generally ask about prejudice." Id. at 417.

The Court accordingly ruled in Morgan the circuit "was wrong to condition a waiver of the right to arbitrate on a showing of prejudice." Ibid. It remanded the case for an analysis of whether Sundance "knowingly relinquish[ed] the right to arbitrate by acting inconsistent with that right." Id. at 419.

Here, the parties cited Cole and Morgan in their arguments to the trial court. Marmo argued the Cole factors weighed against a finding of waiver, and noted that, among other things, Biagi was not prejudiced by the six-month delay

11

in Marmo's filing of the dismissal motion. Biagi, meanwhile, asserted that Morgan renders prejudice irrelevant to the waiver analysis, and that the remaining Cole factors here weigh in favor of waiver. In this regard, Biagi has relied on several recent circuit court opinions applying Morgan. See White v. Samsung Elecs. Am., Inc., 61 F.4th 334, 339 (3d Cir. 2023) (holding that Morgan disallows under the FAA "tests that placed prejudice to the party not seeking arbitration as the focus of the waiver inquiry"); Armstrong v. Michaels Stores, Inc., 59 F.4th 1011, 1015 (9th Cir. 2023) (construing Morgan to "abrogate[] . . . precedents to the extent they required the party opposing arbitration to demonstrate prejudice").

The trial court expressed ambivalence in its written decision. Initially, it highlighted that Marmo had chosen to file a complaint in the Law Division with broader contractual, quasi-contractual, and other claims that went beyond those necessary to enforce the construction lien. The court also underscored that "Marmo through its counsel certified [in its Rule 4:5-1(b)(2) statement] that 'no other action or arbitration proceeding is contemplated.'" The court observed, "[i]t is difficult to read that [certification] as other than a voluntary and intentional relinquishment of a known right. What else does that mean than 'we do not plan to go through arbitration?'"

The trial court punctuated these initial observations with the following discussion:

> Marmo had full knowledge of the right and obligation to proceed through arbitration, but chose not to take that route, utilizing the court instead. To this court that action shows Marmo knew of the right and then abandoned it. Then in answer to defendants' counterclaim, no reference or affirmative defense is made as regards the contractual right to arbitration in an effort to enliven that right. Instead, plaintiff takes the opportunity to take discovery. Then through the benefit of discovery, plaintiff gained substantial materials in answer to its document request and interrogatories. But then, at least as last known to the court, did not reciprocate by responding to the defendant's inquiries. <u>All of the elements of waiver are met</u>.
>
> [(Emphasis added).]

Despite those observations, the trial court noted that the amount of time that had elapsed since the complaint was filed was not lengthy:

> This is not an aged case by any means, nor anywhere approaching the eve of trial. There have been no motions filed in the case other than the motion to transfer, and while there have been lively efforts at discovery it would appear that process is closer to the beginning than at the end. There has been some delay in making the arbitration request, but not inordinate delay, the request having been made within six months from the filing of the complaint. Under <u>Cole</u>, <u>those factors would likely favor transferring the claims to the contractually agreed arbitration</u>.

13

A-3120-22

[(Emphasis added).]

The court then addressed the question of prejudice. It found that "the real prejudice to the defendant is not having the benefit of the court system and the opportunity to put the case before a jury if the matter is transferred to arbitration." But even if no other prejudice is demonstrated, the court deemed the lack of such additional prejudice inessential to a finding of waiver under the Supreme Court's opinion in Morgan. The court construed Morgan to signify that "resulting prejudice to the other party [here, Biagi] is not a consideration since the elements of waiver look to the waiving party, and not the defendant in this case."

Having analyzed these various considerations, the court concluded as follows:

> While the analysis under Cole would appear more favorable to the plaintiff's position, examining the application using the elements of waiver as directed by the U.S. Supreme Court in Morgan leads this court to the conclusion that plaintiff waived their right embodied in the Construction Contract to litigate the various claims enumerated in the complaint and counterclaim in arbitration. It is difficult for this court to see how the favorable factors arrived at under Cole would overcome plaintiff's own act in bringing the claim in court knowing that he had [a] right to proceed per the contract through arbitration and then certified as part of the court filing that no other arbitration proceeding is contemplated. The court finds that

14

> plaintiff <u>has waived its right</u> to transfer the case to arbitration and therefore denies the motion.
>
> [(Emphasis added).]

Marmo appealed the trial court's ruling. It contends the trial court should have adhered to its tentative observation that the <u>Cole</u> factors weighed overall against waiver, and that the court was unduly swayed by <u>Morgan</u> in its ultimate assessment of the circumstances. Biagi counters that the trial court's ultimate conclusion was correct, if not all of its reasoning. Biagi asserts that <u>Morgan</u> forbids any consideration of prejudice and that, despite the trial court's observation, the other <u>Cole</u> factors actually weigh in favor of waiver.

## III.

We review the trial court's disposition of the legal issue of waiver de novo. <u>Skuse v. Pfizer, Inc.</u>, 244 N.J. 30, 46 (2020). Having done so, with the benefit of helpful post-argument supplemental briefs submitted by the parties at our request, we affirm the order denying arbitration, albeit for reasons somewhat different than those expressed by the trial court.

### A.

As a threshold matter, we construe <u>Morgan</u> to disallow consideration of prejudice only if that is used by a court as a necessary element for waiver in the arbitration context.

15

Our New Jersey case law generally does not require prejudice to prove waiver. Waiver is defined as "the voluntary and intentional relinquishment of a known right." Knorr v. Smeal, 178 N.J. 169, 177 (2003). Waiver may be inferred from conduct, in addition to explicit declarations. Ibid. In Shebar v. Sanyo Business Systems Corp., 111 N.J. 276, 291 (1988), the Supreme Court described the concept of waiver as follows:

> Waiver, under New Jersey law, involves the intentional relinquishment of a known right, and thus it must be shown that the party charged with the waiver knew of [that party's] legal rights and deliberately intended to relinquish them. . . . [W]aiver implies an election by the party to dispense with something of value, or to forego some advantage which [one] might at [one's] option have demanded and insisted on. Questions of waiver, therefore, are usually questions of intent, which are factual determinations that should not be made on a motion for summary judgment.
>
> [Ibid. (emphasis added) (quotations omitted).]

The definition of waiver therefore focuses predominantly on the intent of the waiving party. Ibid. This accords with Morgan, which similarly observed that "[t]o decide whether a waiver has occurred, the court focuses on the actions of the person who held the right; the court seldom considers the effects of those actions on the opposing party." 596 U.S. at 417.

A-3120-22

The Supreme Court's controlling opinion in Cole, however, does not mandate a showing of prejudice by the party opposing arbitration. Instead, prejudice is listed by the Court as only one of seven factors for trial courts to consider. 215 N.J. at 280-81. As we noted above, Cole expressly instructed that "[n]o one factor is dispositive." Id. at 281.

The Court recognized in Cole that some courts in other jurisdictions had "require[d] a party to prove prejudice as an element of waiver," other courts had "specifically declare[d] a party need not prove prejudice," while still others "find prejudice is simply one factor to consider." Id. at 280 (citations omitted). The Court declined to address the contention of an amicus, which had urged that "prejudice to the party resisting arbitration is simply a factor, and certainly not an indispensable factor, in a waiver analysis." Id. at 282. But the Court implicitly treated prejudice in a non-dispositive way in its ensuing analysis. The Court explained that "[i]f we define prejudice as 'the inherent unfairness—in terms of delay, expense, or damage to a party's legal position—[then prejudice] occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue.'" Ibid. (internal citation omitted) (second alteration in original).

17

As the Court elaborated, that is exactly what occurred in Cole itself, in which the defendant forced the plaintiff to litigate the case for twenty-one months before it moved to compel arbitration on the eve of trial and "start over in a different forum under different rules." Ibid. The Court concluded that the defendant, having engaged in such conduct, waived its right to arbitrate. Id. at 283. It added that "[s]uch conduct undermines the fundamental principles underlying arbitration and is strongly discouraged in our state." Ibid.

Cole illustrates that, under New Jersey law, prejudice can serve as one of many waiver factors within the totality of circumstances. In this respect, Cole displaced our own previous appellate decisions that had required a party asserting an opponent's waiver of an arbitration right to demonstrate it had suffered prejudice. See, e.g., Angrisani v. Fin. Tech. Ventures, L.P., 402 N.J. Super. 138, 150 (App. Div. 2008) ("A waiver of a right to arbitration based on a delay in seeking that relief will be found only if that delay has resulted in demonstrable prejudice to the party opposing arbitration." (emphasis added)); Spaeth v. Srinivasan, 403 N.J. Super. 508, 515 (App. Div. 2008) ("[T]he presence or absence of prejudice has been deemed determinative of the issue of waiver." (emphasis added)).

Cole's inclusion of prejudice within its multifactor test as a non-dispositive and non-essential consideration does not unduly tilt the waiver analysis for or against arbitration. It is simply something the court should consider within the overall mix of factors. We do not believe that such an approach violates Morgan. In fact, we have held that the multifactor Cole test of waiver should apply, by analogy, in a non-arbitration context involving a plaintiff's assertion that a defendant had waived the application of a contractual forum selection clause. See Largoza v. FKM Real Est. Holdings, Inc., 474 N.J. Super. 61, 83-87 (App. Div. 2022). In our discussion in Largoza, we quoted from a Texas opinion that deemed the "actual prejudice" to a plaintiff a relevant factor in assessing whether defendant waived its right to invoke a forum selection clause. Id. at 85 (quoting In re Nationwide Ins. Co. of Am., 494 S.W.3d 708, 713-17 (Tex. 2016)). Our post-Cole case law has therefore not singled out arbitration.

For these various reasons, we reject Biagi's contention that Morgan requires the elimination of prejudice from Cole's multifactor test. We now then turn to the remaining arguments before us.

B.

Marmo contends the trial court improperly penalized it for filing a case in the Law Division after asserting and proving, in part, a residential construction lien before a CLL arbitrator. Marmo argues the CLL requires lien claimants to "commence an action in the Superior Court" within one year to enforce the lien and to avoid "forfeit[ing] all rights to enforce the lien" per N.J.S.A. 2A:44A-14. However, Marmo overlooks part (d) of N.J.S.A. 2A:44A-14, which states "[a]ny disputes arising out of the improvement which is the subject of a lien claim but which are unrelated to any action to enforce a lien claim may be brought in a separate action or in a separate count in the same action." (emphasis added). Thus, litigants have the option, but are not required, to include related claims in a CLL complaint or to maintain separate actions to vindicate the distinct interests. See also Orefice v. ADR, 315 N.J. Super. 493, 497-98 (App. Div. 1998) (finding lien claims supplement, but do not replace, traditional contract claims). Orefice relied on N.J.S.A. 2A:44A-3 ("Nothing in this act shall be construed to limit the right of any claimant from pursuing any other remedy provided by law.") and the CLL's limitation on the amount of a lien to the contract price (to the exclusion of claims for lost profits). Id. at 498.

A-3120-22

The trial court properly weighed against Marmo its inclusion of contractual, quasi-contractual, and other claims in the complaint beyond the CLL claim. In any event, there are sufficient grounds to find waiver, regardless of whether that particular aspect of its complaint should be held against Marmo. We turn now to a sequential analysis of the Cole factors.

C.

1. Delay. As we noted above, the trial court found that Marmo's delay of approximately six months between filing its complaint and moving to compel arbitration[3] was "not inordinate." The delay is substantially less than the twenty-one-month delay that the Court decried in Cole. Six months is approximately the same delay we excused in Spaeth, 403 N.J. Super. at 516. However, unlike the pro se litigant in Spaeth—who had asserted a right to arbitrate before exchanging discovery or scheduling depositions—Marmo was represented here by counsel, who was better equipped to recognize its right to arbitration and act

_____

[3] Delay is calculated as the time between the filing of the complaint and the first assertion of a right to arbitrate. See Cole, 215 N.J. at 271; Spaeth, 403 N.J. Super. at 512-17 (applying the same calculation to quantify delay by pro se defendant). Cole and Spaeth both calculated delays in situations where the waiving party was a defendant, whereas Marmo here is a plaintiff. We believe the filing of the complaint should remain the operative start date, as it marks the first time Marmo demonstrated an intention to litigate, not arbitrate.

upon it swiftly. In any event, if the delay factor is assessed purely by the passage of time, it does not weigh heavily in favor of waiver.

2. <u>Motion Practice</u>. No motion practice, dispositive or otherwise, occurred before Marmo moved to compel arbitration. The trial court did note Marmo's threat to file a motion to compel discovery. The threat occurred four months after the complaint was filed and was not carried out, as Biagi produced the demanded discovery shortly thereafter. Even without the formal filing of a discovery motion, we regard Marmo's threat to compel discovery as relevant to the <u>Cole</u> analysis, because it evinces conduct by Marmo to invoke judicial enforcement processes that are, by comparison, more robust than those in arbitration.[4]

3. and 4. <u>Litigation Strategy and the Extent of Discovery Conducted</u>. We next consider, under factor three, whether Marmo's delay in seeking arbitration

---

[4] <u>See</u> Am. Arb. Ass'n, <u>Constr. Indus. Arb. Rules & Mediation Procs.</u> R-25 (rev. 2024) (the "<u>AAA Construction Rules</u>") (noting the "enforcement powers of the arbitrator" may be invoked "in the case of <u>willful non-compliance</u> with any order issued by the arbitrator" and include "drawing adverse inferences, excluding evidence and other submissions, and/or making special allocations of costs or an interim award of costs arising from such non-compliance"), as contrasted with the Part IV discovery rules in the Superior Court that provide for certain remedies for non-compliance as of right. <u>Cf.</u> <u>R.</u> 4:23-1 (concerning dismissal for failure to answer interrogatories); <u>see also</u> <u>Hay Grp., Inc. v. E.B.S. Acquisition Corp.</u>, 360 F.3d 404, 408-09 (3d Cir. 2004) (interpreting the FAA to find that arbitrators are not empowered to issue pre-hearing subpoenas).

was part of its "litigation strategy," and, relatedly, the fourth factor—"the extent of discovery conducted."  As we noted above, the trial court observed:

> What plaintiff's strategy was in filing the court action knowing that the [] Contract required such disputes to be filed through arbitration is difficult to determine. . . . Plaintiff clearly received the benefit of the court filing through the discovery it received, but it is not clear from the record whether that same discovery could have been obtained through the arbitrator.

Here, as noted by the trial court, Marmo obtained substantial discovery from Biagi, including hundreds of pages of documents and interrogatory answers.  It also obtained documents subpoenaed, albeit by Biagi, from four subcontractors.

The AAA Construction Rules do not provide an automatic right to take depositions in cases with claims under $1,000,000.  Id. at L-4(f).  This dispute would likely not be afforded depositions, since Marmo's complaint seeks recovery of a lien amount of only $132,887, plus unquantified other damages.  Although no depositions were conducted yet in the Law Division case, the parties had scheduled them with the participation of Marmo's counsel.  Biagi was thereby deprived of the ability to carry out those depositions as of right under the Rules of Court.

Marmo's delay in moving to compel arbitration allowed it to obtain the early benefit of discovery that might not have been as easily obtainable in arbitration. Marmo requested additional time to answer Biagi's own discovery demands and only moved to compel arbitration when it seemed likely that the trial court would force Marmo to reciprocate in producing documents. Marmo used the court system to its advantage before shifting the case to arbitration. We accept the representation of Marmo's counsel concerning <u>Cole</u> factor three, that Marmo's failure to recognize its right to arbitration sooner was a good-faith mistake, but that does not eliminate the relevance of <u>Cole</u> factor four, that strongly weighs against waiver.

5.  <u>The Pleadings</u>. The fifth <u>Cole</u> factor, "whether the party raised the arbitration issue in its pleadings, particularly as an affirmative defense, or provided other notification of its intent to seek arbitration" also weighs against Marmo. 215 N.J. at 281. Here, Marmo initiated the action by filing its complaint rather than asserting its right to arbitration. As we noted above, and as emphasized by the trial court, Marmo attested in its <u>Rule</u> 4:5-1(b)(2) certification that no arbitration was pending and that, to "the best of its belief," none was contemplated. The <u>Rule</u> recognizes a party's "continuing obligation" to amend the certification if the underlying facts change. Marmo made no such

24

amendment, instead responding to Biagi's counterclaims with an answer alleging eight affirmative defenses, none of which concerned arbitration. These pleadings strongly weigh as a factor in favor of waiver.

We add, as a general point of guidance, that judicial resources are wasted when a case is brought by a plaintiff and litigated in the Superior Court when it should have been pursued instead in arbitration. Consequently, we emphasize the importance of accurate Rule 4:5-1(b)(2) certifications at the outset of a case, and counsel's due diligence in promptly advising the court and opposing counsel, on a continuing basis, as to whether arbitration might be sought.

6. Proximity to a Trial Date. This factor weighs here against waiver, since no trial date in the Law Division had been set.

7. Prejudice. Although it is non-dispositive for the reasons we have already explained, we discern this factor weighs slightly here in favor of waiver. We reach that assessment because Marmo was able to obtain, through the Superior Court discovery process, a substantial and lopsided amount of early discovery from Biagi that it might not have been able to obtain so readily in arbitration. Even though the extent of prejudice to Biagi was arguably modest, it is not completely insignificant.

25

Having completed the foregoing de novo analysis of the <u>Cole</u> factors, we conclude the totality of such factors weighs in favor of the trial court's ultimate determination that Marmo waived the opportunity to compel arbitration. For the reasons we have canvassed, Marmo's actions and inactions as the plaintiff in this lawsuit justify, on the whole, waiver of its right to bring this dispute in arbitration, pursuant to the terms of the contract that it drafted.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office

CLERK OF THE APPELLATE DIVISION

26

A-3120-22