**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3973-23

TIMOTHY TISDER,

    Plaintiff-Appellant,

v.

CITIBANK, N.A., CITI GROUP,
CITI CORP., LLC, and
ABDEL AZKALANY,

    Defendants-Respondents.

_____

Submitted April 7, 2025 – Decided July 2, 2025

Before Judges Sabatino and Jablonski.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Docket No. L-2020-22.

Michael A. Mark Law Firm, LLC, attorney for appellant (Michael A. Mark, on the briefs).

Sills Cummis & Gross, PC, attorney for respondents (Andrew W. Schwartz, of counsel and on the briefs).

PER CURIAM

Plaintiff Timothy Tisder appeals from a Law Division order compelling arbitration of his complaint against defendants for their alleged fraud, misrepresentation, breach of contract, consumer fraud, and violation of the New Jersey Law Against Discrimination ("NJLAD"). N.J.S.A. 10:5-1 to -50. Since the allegations stemmed from plaintiff's participation in defendants' marketing promotion, defendant Citibank moved to resolve all claims in arbitration according to a provision in its client manual. The trial court granted the motion in a comprehensive written opinion. On appeal plaintiff argues that arbitration should not have been compelled for a variety of reasons, but specifically because the arbitration terms are unenforceable and defendants waived their right to arbitration. We disagree and affirm.

I.

In response to defendant Citibank's marketing campaign to attract new accountholders, plaintiff opened a new checking account online and procured at the branch a $70,000 cashier's check to fund it with the expectation that he would receive $700 if he maintained the requisite balance of $50,000 in that account for sixty days.

A-3973-23

As part of the required online account setup, plaintiff was directed to an "Agreements & Disclosures" electronic page. This section of the application contained two check boxes and provided this direction:

> To open your account online continue, you must provide your consent to receipt of terms and conditions, disclosures and legal notices in electronic format as described in the Paperless Terms and Conditions. Your new account is subject to the following agreements[.]

The page listed a number of document links where an account user should access electronic copies of "The Citibank Client Manual, Marketplace Addendum, Privacy Notice, Rate Disclosure[,] and Banking Relationship Fact Sheet", and an "Employee Addendum (if applicable)." Immediately beneath these hyperlinks, Citibank disclosed:

> The Citibank Client Manual provides that any dispute between you and Citibank about your account will be resolved by binding arbitration.

To continue the account establishment process, a new account holder was required to make two acknowledgments, both by checking an electronic dialogue box corresponding next to these statements:

> [1] I agree to the above terms and conditions governing the use of my account.

and

A-3973-23

[2] I agree to the Paperless Terms and Conditions which describe the types of documents provided electronically, systems requirements to view them, how to receive paper copies and how to cancel Paperless.

A customer can access the description of the words "Paperless Terms and Conditions" through a hyperlink.

This contract is known as a "clickwrap" agreement.[1] Consequently, if a user attempted to move past the original Agreements & Disclosures page without accepting the terms of the agreement, the system would prompt the customer in red typeface to "[r]eview terms and conditions and select the checkbox" above the first checkbox, and "[r]eview Paperless Agreement and select the checkbox" above the second. Plaintiff complied with these requirements when he opened his account.

On the front page of defendant's electronic Client Manual, this notification about arbitration appears:

This manual also contains an arbitration provision that covers all disputes between us.

---

[1] "Clickwrap, 'click-through' or 'click-to-accept' as the name implies, requires 'a user consent to any terms or conditions by clicking on a dialog box on the screen in order to proceed with [an] internet transaction.'" Wollen v. Gulf Stream Restoration & Cleaning, LLC, 468 N.J. Super. 483, 496 (App. Div. 2021) (quoting Skuse v. Pfizer, Inc., 244 N.J. 30, 55 n.2 (2020)).

The table of contents of the Client Manual also directs customers to the pertinent arbitration provisions. On page nine, under the general "Account Opening/Ownership/Maintenance" section, there is a specific "Arbitration" section that reads:

> This Agreement contains an arbitration provision that explains that you cannot go to court, have a jury trial or initiate or participate in a class action if you have a dispute with us. Instead, this provision tells you that the dispute must be resolved by a professional arbitrator, not a judge or jury. This section also explains how arbitration works and some of the differences between resolving a dispute in arbitration and resolving one in court. All of the terms of the arbitration provision are set forth in the section entitled "Arbitration." Please read it carefully.

Then on pages fifty-one through fifty-three, a robust explanation of arbitration appears under the "Limitation of Liability" section. Emphasized in bold-face type, the section begins with this admonition:

> **PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY**.

This language follows in all capital letters:

> THIS SECTION PROVIDES THAT DISPUTES MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, HAVE A JURY TRIAL OR INITIATE OR PARTICIPATE IN A CLASS ACTION. IN ARBITRATION, DISPUTES ARE RESOLVED BY AN ARBITRATOR, NOT A JUDGE OR JURY.

A-3973-23

ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN IN COURT. THIS ARBITRATION PROVISION IS GOVERNED BY THE FEDERAL ARBITRATION ACT (FAA), AND SHALL BE INTERPRETED IN THE BROADEST WAY THE LAW WILL ALLOW.

Within the Arbitration section under the heading "Covered Disputes," the agreement provides partially in bold face type "**[y]ou or we may arbitrate** any claims, dispute or controversy between you and us arising out of or related to your account(s), a previous related account[,] or our relationship (called 'Disputes')." (emphasis in original).

With identical emphasis, the agreement further provides: "**If arbitration is chosen by any party, neither you nor we will have the right to litigate that Dispute in court or have a jury trial on that Dispute**."

The agreement continues:

> Except as stated below, all Disputes are subject to arbitration no matter what legal theory they are based on or what remedy (damages, or injunctive or declaratory relief) they seek, including claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law; claims made as counterclaims, cross-claims, third party claims, interpleaders or otherwise; claims made regarding past, present or future conduct; and claims made independently or with other claims.
>
> . . . .

6

This also includes claims made by or against anyone connected with us or you or claiming through us or you, or by someone making a claim through us or you, such as a joint account owner, account beneficiary, employee, agent, representative, predecessor or successor, heir, assignee, trustee in bankruptcy, or an affiliated/parent/subsidiary company.

. . . .

Disputes also include claims relating to the enforceability or interpretation of any of these arbitration provisions. Any questions about whether Disputes are subject to arbitration shall be resolved by interpreting this arbitration provision in the broadest way the law will allow it to be enforced.

The Arbitration section concludes with instructions as to how the customer can opt out of arbitration:

You may reject this arbitration provision by sending a written rejection notice to us at: 100 Citibank Drive, Attn: Arbitration Opt Out, San Antonio, TX 78245. Your rejection notice must be mailed within [forty-five] days of account opening. Your rejection notice must state that you reject the arbitration provision and include your name, address, account number and personal signature. No one else may sign the rejection notice. Your rejection notice will not apply to the arbitration provision(s) governing any other account(s) that you have or had with us. Rejection of this arbitration provision won't affect your other rights or responsibilities under this Agreement, including use of the account.

A-3973-23

Although plaintiff originated the account online, plaintiff met in person with Citibank representative, defendant Abdel Azkalany, to fund it the next day with the $70,000 cashier's check. Azkalany recommended that plaintiff open a checking account for $50,000 and deposit the balance of the funds into a certificate of deposit ("CD") which guaranteed plaintiff would still receive the advertised bonus as part of the promotion.

Four days later, Citibank advised plaintiff that his accounts would be closed in an email:

> We periodically review customer accounts and assess account activity. Based on a recent review of your Interest Checking account, we found that you have violated the terms of your account per the client manual. As a result, your Interest Checking account and any other Citi accounts you have will be closed within [sixty] days of the date of this communication. All of your accounts are now restricted from receiving deposits or credits, effective immediately.

That day, plaintiff consulted with Azkalany who reported Citibank "claimed this check was fraudulent and that the back office wanted to know where plaintiff got his money." Plaintiff presented all information requested by Citibank to prove the check's legitimacy.

Shortly thereafter, plaintiff sued defendants for the return of the deposited funds. In his complaint, he accused defendants of fraud and

8

misrepresentation and alleged that defendants breached their contract with plaintiff. Thirteen days after the complaint was filed, defendants returned plaintiff's $50,000 but retained plaintiff's $20,000 in the CD. Once the CD had reached its one-year term of maturity, defendants returned plaintiff's $20,000 in a check and $402.14 of interest generated from the CD in cash. Defendants filed an answer but did not seek to resolve the matter through arbitration. The parties engaged in discovery.

Approximately one year later, plaintiff amended his complaint to allege a claim against the existing defendants under the NJLAD. In it, plaintiff accused Citibank of racial discrimination because Citibank questioned the source of plaintiff's funds.

Before discovery was complete on the newly added claim, Citibank moved to compel arbitration on all of the plaintiff's claims. In his comprehensive written decision granting the application, the judge concluded that the parties entered into a valid contract and that the agreement contained an enforceable arbitration provision. The judge also held the terms of the agreement encompassed all filed claims against defendants, including the NJLAD allegation. The judge additionally determined defendants had not waived its right to arbitration.

A-3973-23

Plaintiff appealed.

## II.

The decision to compel arbitration presents a question of law that we review de novo. Santana v. SmileDirectClub, LLC, 475 N.J. Super. 279, 285 (App. Div. 2023) (citing Skuse, 244 N.J. at 46). Relatedly, "[t]he issue of whether a party waived its arbitration right is a legal determination subject to de novo review." Cole v. Jersey City Med. Ctr., 215 N.J. 265, 275 (2013) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)). However, although we owe no deference to the trial judge's legal conclusions, we do cede to the judge's fact-finding subject to clear error as it applies to the defendant's purported waiver of arbitration. Santana, 475 N.J. Super. at 285; Cole, 215 N.J. at 275 (citing Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 483-84 (1974)).

In light of these principles, we conclude the trial judge correctly found plaintiff and defendants entered into an enforceable agreement to arbitrate all disputes between the parties. Defendants did not waive their right to compel arbitration of plaintiff's claims.

A.

"Under both the FAA and New Jersey law, arbitration is fundamentally a matter of contract." Antonucci v. Curvature Newco, Inc., 470 N.J. Super. 553, 561 (App. Div. 2022) (citing Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 67 (2010); 9 U.S.C. § 2; NAACP of Camden Cnty. E. v. Foulke Mgmt. Corp., 421 N.J. Super. 404, 424 (App. Div. 2011)). The FAA requires courts to "place arbitration agreements 'on equal footing with all other contracts.'" Skuse, 244 N.J. at 47 (quoting Kindred Nursing Centers Ltd. P'ship v. Clark, 581 U.S. 246, 248 (2017). "Accordingly, 'the FAA "permits states to regulate . . . arbitration agreements under general contract principles," and a court may invalidate an arbitration clause "upon such grounds as exist at law or in equity for the revocation of any contract."'" Antonucci, 470 N.J. Super. at 561 (quoting Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430, 441 (2014))).

Reviewing a trial court's order to compel arbitration, "we are mindful of the strong preference to enforce arbitration agreements, both at the state and federal level." Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 186 (2013) (citing Hojnowski v. Vans Skate Park, 187 N.J. 323, 341-42 (2006)). "[T]he affirmative policy of this State, both legislative and judicial, favors arbitration as a mechanism of resolving disputes." Flanzman v. Jenny Craig, Inc., 244

11

N.J. 119, 133 (2020) (quoting Martindale v. Sandvik, Inc., 173 N.J. 76, 92 (2002)). "Because of the favored status afforded to arbitration, '[a]n agreement to arbitrate should be read liberally in favor of arbitration.'" Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A., 168 N.J. 124, 132 (2001) (alteration in original) (quoting Marchak v. Claridge Commons, Inc., 134 N.J. 275, 282 (1993)). "That favored status, however, is not without limits." Ibid.

New Jersey has a long-standing policy of protecting the right to access its courts. The New Jersey Constitution provides "[t]he right of trial by jury shall remain inviolate." N.J. Const. art. I, ¶ 9. "Although rights may be waived, courts 'indulge every reasonable presumption against waiver of fundamental constitutional rights.'" Mazdabrook Commons Homeowners' Ass'n v. Khan, 210 N.J. 482, 505 (2012) (quoting Johnson v. Zerbst, 304 U.S. 458, 464 (1938)). "To be valid, waivers must be knowing, intelligent, and voluntary." Ibid.

The Court's intention in Atalese was "to assure that the parties know that in electing arbitration as the exclusive remedy, they are waiving their time-honored right to sue." Atalese, 219 N.J. at 444 (quoting Garfinkel, 168 N.J. at 132). Accordingly, the Court emphasized that while "no prescribed set of words must be included in an arbitration clause to accomplish a waiver of

rights," an enforceable arbitration clause "at least in some general and sufficiently broad way, must explain that the plaintiff is giving up [his or] her right to bring [his or] her claims in court or have a jury resolve the dispute." Id. at 447.

"An arbitration agreement must be the result of the parties' mutual assent, according to customary principles of state contract law." Skuse, 244 N.J. at 48 (citing Atalese, 219 N.J. at 442). "Thus, 'there must be a meeting of the minds for an agreement to exist before enforcement is considered.'" Ibid. (quoting Kernahan v. Home Warranty Adm'r of Fla., Inc., 236 N.J. 301, 319 (2019)). "An arbitration provision is not enforceable unless the consumer has reasonable notice of its existence." Wollen, 468 N.J. Super. at 498 (citing Hoffman v. Supplements Togo Mgmt., LLC, 419 N.J. Super. 596, 609 (App. Div. 2011)). However, "a party may not claim lack of notice of the terms of an arbitration provision for failure to read it." Santana, 475 N.J. Super. at 286. "[A]s a general rule, 'one who does not choose to read a contract before signing it cannot later relieve himself [or herself] of its burdens.'" Skuse, 244 N.J. at 54 (quoting Riverside Chiropractic Grp. v. Mercury Ins. Co., 404 N.J. Super. 228, 238 (App. Div. 2008)).

A-3973-23

When reviewing a motion to compel arbitration, a court undertakes a two-prong inquiry: (1) whether there is a valid and enforceable agreement to arbitrate disputes; and (2) whether the dispute falls within the scope of the agreement. Martindale, 173 N.J. at 86-88, 92. "Under state law, 'if parties agree on essential terms and manifest an intention to be bound by those terms, they have created an enforceable contract.'" Flanzman, 244 N.J. at 135 (quoting Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435 (1992)).

Web-based consumer contracts, such as the subject arbitration agreement, are now prevalent in society and our courts have long found them to be valid. See Wollen, 468 N.J. Super. at 495. Clickwrap agreements are also routinely enforced because the user has agreed they were put on notice of the terms and assented to them. See Santana, 475 N.J. Super. at 288-89.

In light of these principles, we find Citibank's arbitration agreement is enforceable as to all of plaintiff's claims. More than sufficient notice was provided to plaintiff that any dispute would be resolved through arbitration. Plaintiff was directed to, and did affirmatively, click to accept two dialogue boxes that were hyperlinked to the pertinent documents to create his online account. Most importantly, this page is unable to be bypassed, and the application process could not continue unless plaintiff agreed to the agreement

14

terms by clicking the dialogue box. Those documents thoroughly set forth the concept, theory, and method as to how disputes would be arbitrated. Contained in the Client Manual is an arbitration provision notice included in the "Account Opening/Ownership/Maintenance" and "Limitation of Liability" sections which alert the customer of mandatory arbitration. Those notices were emphasized in bold typeface and also in capital lettering.

To the extent we have not addressed plaintiff's remaining arguments as to this point, they lack sufficient merit to warrant a discussion in a written opinion. R. 2:11-3(e)(1)(E). However, we briefly address plaintiff's assertion that the NJLAD complaint is not subject to resolution through arbitration.

Plaintiff argues that his NJLAD claim cannot be resolved through arbitration. We disagree. The NJLAD was amended effective March 18, 2019, and prohibited the waiver of any substantive or procedural right or remedy related to a claim of discrimination. See N.J.S.A. 10:5-12.7. That amendment, however, is applied prospectively. Ibid. We previously concluded that this amendment only applies to arbitration agreements governed by New Jersey law. Antonuccio, 470 N.J. Super. at 564-66. We held the amendment is pre-empted when applied to an arbitration agreement governed by the FAA. Ibid. In the "Limitation of Liability" chapter under the

"Arbitration" section of the Client Manual, in bold-faced capital lettering, defendant asserts that "**THIS ARBITRATION PROVISION IS GOVERNED BY THE FEDERAL ARBITRATION ACT (FAA) AND SHALL BE INTERPRETED IN THE BROADEST WAY THE LAW WILL ALLOW.**" Because it is clear the FAA governs the arbitration agreement at issue here, the NJLAD claim is subject to arbitration.

B.

Plaintiff also argues defendants waived their right to arbitrate the claims stating that: (1) defendants engaged in "substantial litigation" for nearly twenty months before exercising their option to arbitrate; (2) defendants affirmatively "considered, discussed, and then decided to not arbitrate []"; and (3) defendants misrepresented the time limit for filing for arbitration. We disagree.

A demand for arbitration should not be granted "when a party to a contractual arbitration provision has waived the right to compel arbitration, by its actions or inactions." Marmo & Sons Gen. Contracting, LLC v. Biagi Farms, LLC, 478 N.J. Super. 593, 602 (App. Div. 2024) (citing Cole, 215 N.J. at 276-77). Our state has a "presumption against waiver of an arbitration agreement, which can only be overcome by clear and convincing evidence that

the party" seeking to enforce the arbitration agreement "chose to seek relief in a different forum." Spaeth v. Srinivasan, 403 N.J. Super. 508, 514 (App. Div. 2008).

Trial courts should consider seven non-dispositive factors to analyze whether a party waived its right to arbitration based on litigation conduct:

> (1) the delay in making the arbitration request; (2) the filing of any motions, particularly dispositive motions, and their outcomes; (3) whether the delay in seeking arbitration was part of the party's litigation strategy; (4) the extent of discovery conducted; (5) whether the party raised the arbitration issue in its pleadings, particularly as an affirmative defense, or provided other notification of its intent to seek arbitration; (6) the proximity of the date on which the party sought arbitration to the date of the trial; (7) the resulting prejudice suffered by the other party, if any.
>
> [Cole, 215 N.J. at 280-81.]

An assessment of an arbitration agreement under the Cole factors "must focus on the totality of the circumstances," which requires a "fact-sensitive analysis." Id. at 280. "In making that assessment, courts "concentrate on the party's litigation conduct to determine if it is consistent with its reserved right to arbitrate the dispute." Hopkins v. LVNV Funding LLC, 481 N.J. Super. 49, 63 (App. Div. 2025) (quoting Cole, 215 N.J. at 280). Therefore, in balancing

17

the Cole factors and considering the totality of the circumstances, we conclude that defendants did not waive their right to arbitrate.

Although there was a significant period between the filing of the initial complaint (August 12, 2022) and the motion to compel arbitration (March 28, 2024), a critical change occurred after the plaintiff added the NJLAD claim in October 2023 — over a year after the original complaint. After this point, defendants promptly moved to assert their arbitration rights following the addition of this new and substantively different claim.

Next, the record indicates that, prior to seeking arbitration, the parties engaged solely in routine and non-dispositive motion practice including motions to extend discovery, motions regarding discovery responses, and motions for amendments and reinstatements. No dispositive motions were filed nor ruled upon prior to the request for arbitration.

Similarly, there is no compelling evidence that defendants engaged in a strategic delay to gain any tactical advantage when it exercised its arbitration option. Rather, the record demonstrates that defendants raised the arbitration issue once the litigation fundamentally changed with the addition of the NJLAD claim that potentially expanded the scope of remedies (including possible counsel fees) and implicated broader issues than those found in the

original complaint. Defendants' actions appear consistent with responsiveness to the evolving nature of the claims asserted rather than gamesmanship or dilatory intent.

Additionally, although discovery was proceeding at the time of defendants' request, there is no indication of extensive merits-based discovery that would unfairly prejudice plaintiff if arbitration were compelled.

We acknowledge that although defendants' initial answer to plaintiff's first complaint did not state an intent to arbitrate, their second answer, filed promptly after the addition of new claims, explicitly set forth defendants' intention to move to compel arbitration. This timing aligns with defendants' plausible position regarding the nature of the controversy at various stages and served to give notice once arbitration became appropriate. We also note that no trial date had been scheduled yet at the time of defendants' request.

Finally, although plaintiff claims prejudice if arbitration were to be ordered, given the early stage of the proceedings, the lack of dispositive motions, the ongoing nature of discovery, and the fact that the pivotal claim shift (addition of the NJLAD claim) occurred relatively recently in the litigation we conclude any prejudice suffered is de minimis and does not rise to the level required to justify a finding of waiver.

 A-3973-23

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division

A-3973-23